[No. S034307. Mar. 2, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ROMERO WILEY, Defendant and Appellant.

## COUNSEL

Michael Satris, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, J.**—Penal Code section 667, subdivision (a)(1),[1] provides that "any person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction *on charges brought and tried separately.*" (Italics added.) For the reasons that follow, we hold that, although a defendant has a statutory right to have the jury determine whether he or she suffered prior convictions alleged pursuant to section 667(a)(1), the issue whether such prior convictions arose from "charges brought and tried separately" is to be determined by the court rather than the jury. We further hold that the circumstances of the present case, which include a showing that the prior convictions at issue arose from separate informations bearing case numbers that differ significantly, constitute sufficient evidence to support the conclusion that the prior convictions were "brought and tried separately" within the meaning of section 667(a)(1).

I

By an amended information filed June 24, 1991, defendant Romero Wiley was charged with attempted murder (§§ 187, 664), assault with a deadly

---

[1]Hereafter section 667(a)(1). All further statutory references are to the Penal Code unless otherwise indicated.

weapon (§ 245, subd. (a)(1)), first degree burglary (§§ 459, 460), and second degree burglary (*ibid.*). Several sentence enhancements also were alleged, including two allegations, pursuant to section 667(a)(1), that on September 27, 1983, defendant had suffered two previous convictions for the serious felony of first degree burglary.

Prior to trial, the superior court granted defendant's motion to bifurcate the determination of the truth of the section 667(a)(1) prior conviction allegations from the trial of the currently charged offenses. A jury trial commenced the following day, and defendant subsequently was convicted of those charged offenses. At the ensuing second phase of the jury trial involving the prior conviction allegations, the People introduced into evidence the following documents: (1) an abstract of judgment reflecting that on September 27, 1983, defendant was convicted in Contra Costa Superior Court, in cases No. 27767 and No. 27902, of two counts of first degree burglary; (2) a portion of the court minutes in these two cases, which showed that in case No. 27767 defendant had been convicted following a court trial conducted on September 26, 1983, and had been convicted in case No. 27902 following a court trial conducted on the following day; and (3) the amended information filed in superior court in case No. 27767, which reflected that defendant was charged with committing burglary of "the apartment of Thelma Radford" on May 5, 1983. The information in case No. 27902 was not produced.

Before the court instructed the jury regarding the prior conviction allegations, defense counsel requested that these instructions direct the jury to determine whether the two prior burglary charges had been "brought and tried separately" within the meaning of section 667(a)(1). The trial court declined to so instruct the jury, ruling that this was an issue of law to be decided by the court.

The jury found true the prior conviction allegations. The trial court subsequently sentenced defendant to a term of twenty-two years, eight months, in prison, including enhancements of five years each for the two prior serious felony convictions alleged under section 667(a)(1). The trial court did not expressly state that the two prior burglary convictions had been brought and tried separately, but did declare that they "are offenses that fall within the provisions of Section 667(a)."

On appeal, the Court of Appeal agreed with the trial court that the issue whether prior convictions alleged pursuant to section 667(a)(1) arose from charges brought and tried separately is a question of law for the court to determine, but held that the evidence submitted by the People was insufficient to support a finding that the prior convictions here at issue had been

brought separately. We granted review to consider (i) whether, in a jury trial, the court or the jury should determine whether alleged prior convictions arose from charges "brought and tried separately" within the meaning of section 667(a)(1), and (ii) whether the evidence presented in this case is sufficient to support the trial court's implied finding that the prior convictions here at issue arose from charges separately brought.

## II

As noted above, section 667(a)(1) provides that a defendant who is convicted of a serious felony, as defined in section 1192.7, shall receive a five-year sentence enhancement for each previous conviction for a serious felony "on charges brought and tried separately." In *In re Harris* (1989) 49 Cal.3d 131, 136 [260 Cal.Rptr. 288, 775 P.2d 1057], we held that "the requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." We held that the prior convictions alleged in *Harris* had not been brought separately, because the charges that led to these convictions had been "made in a single complaint" filed in municipal court and a single preliminary hearing had been held, although the charges thereafter were prosecuted in the superior court in two separate informations. (*Id.* at pp. 134, 136.) We previously have not decided, however, whether the court or a jury should determine whether prior convictions alleged pursuant to section 667(a)(1) were "brought and tried separately."

It is clear that the federal Constitution does not confer a right to have a jury determine this (or any other) aspect of a sentence enhancement imposed upon a defendant for previously having been convicted of a serious felony set forth in section 667(a)(1). In general, "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." (*McMillan* v. *Pennsylvania* (1986) 477 U.S. 79, 93 [91 L.Ed.2d 67, 81, 106 S.Ct. 2411], citing *Spaziano* v. *Florida* (1984) 468 U.S. 447, 459 [82 L.Ed.2d 340, 351-352, 104 S.Ct. 3154]; cf. *Walton* v. *Arizona* (1990) 497 U.S. 639, 648 [111 L.Ed.2d 511, 524, 110 S.Ct. 3047] [" '[T]he Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.' "].) The absence of any federal constitutional requirement that a jury determine the truth of prior conviction allegations is reflected in the circumstance that most jurisdictions in the United States do not grant the defendant a right to a jury determination of such sentencing issues. As we noted recently in *People* v. *Calderon* (1994) 9 Cal.4th 69, 76 [36 Cal.Rptr.2d 333, 885 P.2d 83]: "At least half the states, as well as the federal government and the District of Columbia, . . . [have]

the court, rather than a jury, determine the truth of alleged prior convictions. This is the approach recommended by the Model Penal Code. [Citation.]" (Fn. omitted.)

Neither does the California Constitution grant a right to have a jury determine the truth of prior conviction allegations that relate to sentencing. The pertinent provision of the California Constitution, article I, section 16, simply states: "Trial by jury is an inviolate right and shall be secured to all . . . ." Nothing in the text or history of this provision purports to require a jury determination of all factual issues involved in a criminal trial.[2] It is well settled that it is within the province of the court to resolve factual issues that arise in many contexts in a criminal proceeding.[3]

Thus, the ability of courts to make factual findings in conjunction with the performance of their sentencing functions never has been questioned. From the earliest days of statehood, trial courts in California have made factual determinations relating to the nature of the crime and the defendant's background in arriving at discretionary decisions in the sentencing process, for example, with regard to the grant or denial of probation. (See, e.g., § 1203, subd. (b) ["*If the court determines* that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be served by granting probation to the person, it may place the person on probation." (Italics added.)].) It previously was well settled, for example, that a trial court, in deciding whether a defendant was eligible for probation under section 1203, could determine whether the defendant had suffered a previous felony conviction, even though the prior offense had not been pleaded or proven before the jury. (*People* v. *Tell* (1954) 126 Cal.App.2d 208, 209 [271 P.2d 568]; *People* v. *Leach* (1937) 22 Cal.App.2d 525, 527-528 [71 P.2d 594].) A recent Court of Appeal opinion holds that trial courts still are empowered, in determining probation eligibility, to decide

---

[2]Article I, section 3, of the California Constitution of 1849 stated, in pertinent part: "The right of trial by jury shall be secured to all, and remain inviolate forever . . . ." In nearly identical language, the original article I, section 7, of the California Constitution of 1879 stated, in pertinent part: "The right of trial by jury shall be secured to all, and remain inviolate . . . ."

[3]See, e.g., section 1538.5, subivision (c) ("[T]he judge or magistrate shall receive evidence on any issue of fact necessary to determine the motion [to suppress evidence]."); *People* v. *Rios* (1976) 16 Cal.3d 351, 357 [128 Cal.Rptr. 5, 546 P.2d 293] ("A proceeding pursuant to section 1538.5 is one in which factual issues are resolved by the court sitting as a finder of fact. [Citation.]"); Evidence Code section 405, subdivision (a), dealing with rulings on the admissibility of evidence ("The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises."); see Comment—Assembly Committee on the Judiciary, 29B West's Annotated Evidence Code (1966 ed.) section 405, page 277 ("Section 405 requires the judge to determine the existence or nonexistence of disputed preliminary facts *except in certain situations covered by Sections 403 and 404*.").

whether the defendant suffered prior convictions that neither were pleaded nor proven before the jury. (*People* v. *Dorsch* (1992) 3 Cal.App.4th 1346, 1349-1351 [5 Cal.Rptr.2d 327]; but see *People* v. *Warner* (1978) 20 Cal.3d 678, 685, fn. 4 [143 Cal.Rptr. 885, 574 P.2d 1237]; see also *People* v. *Welch* (1993) 5 Cal.4th 228, 234 [19 Cal.Rptr.2d 520, 851 P.2d 802] ["The statutory scheme obviously contemplates that all issues relevant to the probation determination will be litigated in the sentencing court."].)

Currently, under the provisions of the Determinate Sentencing Act, trial courts are assigned the task of deciding whether to impose an upper or lower term of imprisonment based upon their determination whether "there are circumstances in aggravation or mitigation of the crime," a determination that invariably requires numerous factual findings. (§ 1170, subd. (b) ["In determining whether there are circumstances that justify imposition of the upper or lower term, *the court* may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (Italics added.)].) Similarly, trial courts are called upon to make factual determinations in their decision whether to impose consecutive sentences. (Cal. Rules of Court, rule 425 ["Criteria affecting the decision to impose consecutive rather than concurrent sentences include: [¶] . . . Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominately independent of each other. [¶] (2) The crimes involved separate acts of violence or threats of violence. [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."].) Additionally, in order to determine whether there is a potential for multiple punishment prohibited by section 654,[4] the trial court must determine whether the commission of multiple offenses was " 'incident to one objective . . . .' " (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611].) No case ever has suggested that the jury trial provision of the California Constitution grants a criminal defendant the right to have a jury, rather than the court, make such factual determinations relating to the sentencing process.

In *People* v. *Najera* (1972) 8 Cal.3d 504 [105 Cal.Rptr. 345, 503 P.2d 1353], however, this court cited the California Constitution in holding that section 12022.5, which provides a sentence enhancement where a defendant

---

[4]Section 654 states: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

personally used a firearm in the commission of one of several specified offenses, "requires a jury determination of the factual question whether or not defendant used a firearm in the commission of the underlying offense . . . ." (8 Cal.3d at p. 510, fn. omitted.) But, as explained below, the court's reliance upon the California Constitution was unnecessary to the decision in *Najera* and was not supported by persuasive analysis or citation to relevant authority.

The issue in *Najera* was whether, in a jury trial, the enhancement provided in section 12022.5 could be imposed where it had not been pleaded in the information or found true by the jury. The People conceded that, under such circumstances, the section 12022.5 enhancement must be stricken, but this court discussed the foregoing issue, nevertheless, observing that, at the time the charged offenses were committed, no statute expressly provided a right to have a jury determine the truth of a section 12022.5 enhancement. Section 969c required that in order to justify imposition of an additional term, the closely related enhancement for being *armed* with a firearm, set forth in section 12022, must be pleaded and found true by the jury; however, when the Legislature added the enhancement for *using* a firearm set forth in section 12002.5, it failed to amend section 969c or otherwise require that the latter enhancement also be pleaded and found true by the jury.[5] This court held: " '[T]his omission [to amend section 969c to include section 12002.5] does not manifest a legislative intent to exclude allegations under section 12002.5 from the class of cases in which there is a right to a jury trial.' " (*People* v. *Najera, supra,* 8 Cal.3d at pp. 509-510.) The foregoing conclusion undoubtedly was correct as a matter of statutory interpretation, but the decision in *Najera* went on, unnecessarily, to cite in support of its conclusion the provision of the California Constitution that grants the right to a jury trial. (*Id.* at p. 510.) At the time, this provision provided simply: "The right of trial by jury shall be secured to all, and remain inviolate . . . ." (Cal. Const., former art. I, § 7.) The *Najera* decision failed to explain why this constitutional provision applied to the *sentencing enhancement* at issue in that case, and failed even to consider the numerous circumstances, noted above, in which factual questions related to sentencing traditionally have been determined by the court, rather than by a jury. Accordingly, we believe that this brief mention in *Najera* of the state constitutional right to a jury trial cannot properly be viewed as a considered decision determining the scope of the California constitutional right to a jury trial, as applied to sentencing enhancements.

---

[5]This anomaly later was corrected by the enactment of section 969d, which requires that the section 12022.5 enhancement for using a firearm be pleaded in the information and, in a jury trial, be found true by the jury in order to authorize the trial court to impose an additional term.

The Legislature has acknowledged this general lack of a constitutional right to a jury determination of the truth of alleged sentence enhancements by enacting numerous statutes providing that when a defendant pleads guilty to the underlying offense, the truth of alleged sentence enhancements is to be determined by the court, rather than by a jury. (See, e.g., §§ 666.5, subd. (b), 666.7, subd. (b), 667.7, subd. (b), 667.71, subd. (e), 667.72, subd. (e), 667.75, 667.9, subd. (d), 667.10, subd. (b), 969c, 969d.)[6]

■ Although there is no constitutional right to have a jury determine factual issues relating to prior convictions alleged for purposes of sentence enhancement, California is one of a minority of states that, by statute, has granted defendants the right to have a jury determine the truth of such prior conviction allegations. (*People* v. *Calderon, supra,* 9 Cal.4th 69, 76-77, fn. 3.) The applicable statutes, however, are limited in nature and do not confer a right to have a jury determine whether charges were brought and tried separately within the meaning of section 667(a).

Section 1025 provides that if a defendant denies having suffered an alleged prior conviction, "the question whether or not he has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty . . . ." Similarly, section 1158 states that if a defendant is found guilty of an offense charged in an accusatory pleading that also alleges that the defendant suffered a prior conviction, "the jury, or the judge if a jury trial is waived, must . . . find whether or not he has suffered such previous conviction." By their terms, sections 1025 and 1158 grant a defendant the right to have the jury determine only whether he or she "suffered" the alleged prior conviction, and not whether multiple prior convictions were separately brought and tried.

Section 1170.1, subdivision (f), states that specified enhancements, including the one here at issue, "shall be pleaded and proven as provided by law." We cited this statute, among others, in *People* v. *Hernandez* (1988) 46 Cal.3d 194, 206 [249 Cal.Rptr. 850, 757 P.2d 1013], in holding that "the inevitable pattern" of the determinate sentencing system of which section 667 is part "is to require additional terms to be imposed only after the enhancement has been found true by the trier of fact."

---

[6]One of these statutes, section 969c, was relied upon in *People* v. *Najera, supra,* 8 Cal.3d 504. The decision in *Najera* recognizes that section 969c grants a right to a jury determination of the truth of the sentence enhancement only if the defendant pleads not guilty and has a jury trial on the charged offenses. If the defendant pleads guilty, the truth of the alleged enhancement is determined by the court. The decision in *Najera* fails to acknowledge that this statutory limitation on the right to a jury determination of the truth of the enhancement would be invalid if the California Constitution guaranteed a right to a jury determination of the truth of the enhancement.

The defendant in *Hernandez* was convicted, following a jury trial, of rape and kidnapping. The trial court imposed a three-year sentence enhancement pursuant to section 667.8 upon finding that the defendant had kidnapped the victim "for the purpose of committing" rape, despite the fact that such an enhancement had not been alleged in the information or found true by the jury. This court held the enhancement could not be imposed unless it had been "pled and proven before the trier of fact." (*People* v. *Hernandez, supra*, 46 Cal.3d 194, 206, fn. omitted.) In so holding, however, we recognized that the trial court was not precluded from making factual findings as part of the sentencing process. We concluded that it is the function of the jury to determine "the wrongful criminal conduct for which punishment is being imposed," but that it remains the function of the trial court to decide matters such as whether aggravating or mitigating circumstances are present, or whether the potential exists for multiple punishment proscribed by section 654, as part of the court's duty to determine "what terms can be imposed from among those available based on the conviction offenses and the enhancements found true. [Citations.]" (*Id.* at p. 205.)

In the present case, the information alleged, and the jury found true, that defendant had suffered two prior convictions of serious felonies under section 667(a). The jury thus determined "the wrongful criminal conduct for which punishment is being imposed," as required by our decision in *Hernandez*. (*People* v. *Hernandez, supra*, 46 Cal.3d 194, 205.) The additional question whether the charges leading to these two prior convictions had been "brought and tried separately" within the meaning of section 667(a)(1) properly was a matter for the court, because that question is largely legal in nature. As is demonstrated by the numerous decisions that have considered the proper application of the requirement that the prior charges be "brought and tried separately," resolution of this issue frequently depends upon the interpretation of complex and detailed provisions of California criminal procedure. (See, e.g., *People* v. *Wagner* (1994) 21 Cal.App.4th 729, 732-737 [26 Cal.Rptr.2d 383]; *People* v. *Smith* (1992) 7 Cal.App.4th 1184, 1189-1193 [9 Cal.Rptr.2d 491]; *People* v. *Gonzales* (1990) 220 Cal.App.3d 134, 138-144 [269 Cal.Rptr. 221]; *People* v. *Thomas* (1990) 219 Cal.App.3d 134, 145-147 [267 Cal.Rptr. 908].) Although there are, of course, some underlying "facts" that are relevant to the determination as to whether charges have been "brought and tried separately," such as the filing of charges either in a single complaint or multiple complaints, such facts generally are readily ascertainable upon an examination of court documents. This is the type of inquiry traditionally performed by judges as part of the sentencing function.

None of the authorities cited by defendant supports his argument that the jury *must* determine whether charges leading to multiple prior convictions

were "brought and tried separately." Defendant cites *People* v. *Leever* (1985) 173 Cal.App.3d 853, 871 [219 Cal.Rptr. 581] for the proposition that "the elements of a section 667 enhancement must be pleaded and, if contested, proved beyond a reasonable doubt." But, in *Leever*, the jury's role was limited to finding true the allegations that defendant had suffered the prior convictions. It was the trial court that determined whether those prior convictions qualified as serious felonies within the meaning of section 667(a). (173 Cal.App.3d at p. 872.) The Court of Appeal in *Leever* did not suggest that the jury, rather than the court, should have determined whether the prior convictions constituted serious felonies. Accordingly, *Leever* does not support defendant's position.

Defendant also cites *People* v. *Jackson* (1985) 37 Cal.3d 826, 835, footnote 12 [210 Cal.Rptr. 623, 694 P.2d 736], for the proposition that "[t]he court could not impose an enhanced term for a subsequent serious felony without proof of each fact required for that enhancement . . . ." But *Jackson* did not purport to address the question whether the court or the jury is to determine whether multiple prior convictions were separately brought and tried. Accordingly, *Jackson* does not support defendant's argument.

Defendant next cites *People* v. *Smith, supra,* 7 Cal.App.4th 1184, 1189-1190, for the proposition that, in order to obtain multiple enhancements under section 667, the People must prove that each prior serious felony conviction was separately brought and tried. But *Smith* did not consider whether this was an issue for determination by the jury, because the defendant in *Smith* waived his right to jury trial as to the section 667 allegations. Accordingly, *Smith* also fails to support defendant's argument.

Defendant additionally relies upon two Court of Appeal decisions construing an earlier habitual criminal statute, former section 644, subdivision (a), which provided a term of life imprisonment for persons convicted of certain specified offenses "who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefore in any state prison" upon conviction of specified prior offenses. According to defendant, "the courts found that the prosecution must prove to the factfinder the fact that the charges were brought and tried separately." But neither of the cited cases held that the jury, rather than the court, must determine whether the charges were separately brought and tried. In *People* v. *Collins* (1964) 228 Cal.App.2d 460 [39 Cal.Rptr. 595], defendant, before trial, admitted the prior conviction allegations. The jury found defendant guilty of the currently charged offenses, and "[t]he court then declared defendant to be an habitual criminal under section 644, subdivision (a) . . . ." (*Id.* at p. 462.) Noting the People's concession that the sentences

served by defendant as a result of his prior convictions "may have over-lapped," the Court of Appeal held that the trial court "was clearly in error in declaring defendant to be an habitual criminal in the absence of proof that he served separate terms." (*Id.* at p. 464.) Nothing in the decision in *Collins* suggests that the jury, rather than the court, should have determined whether the prior prison terms had been separately served.

The other Court of Appeal decision relied upon by defendant in support of his interpretation of former section 644 fails to support his argument, and actually compels a conclusion to the contrary. The defendant in *People* v. *Figuieredo* (1956) 146 Cal.App.2d 807 [304 P.2d 161] admitted the alleged prior convictions, was convicted by a jury of the currently charged offenses, and was declared by the court to be an habitual criminal. On appeal, the defendant argued successfully that the trial court erred in declaring him an habitual criminal in the absence of proof he had served separate prison terms resulting from the alleged prior convictions. But the defendant did not contend this determination should have been made by the jury. To the contrary, the defendant stated: "[I]t would appear that such finding should be made (on proper proof) by the trial court." (*Id.* at p. 809.)

In light of the foregoing authority, we hold that the issue whether multiple prior convictions alleged under section 667(a)(1) were "brought and tried separately" is to be determined by the trial court.

### III

■ We now turn to the question whether the evidence before the trial court in the present case was sufficient to support its implied finding[7] that the alleged prior convictions arose from charges "brought and tried separately."

As noted above, we held in *In re Harris, supra,* 49 Cal.3d 131, 136, that prior convictions arising from a single complaint were not brought separately within the meaning of section 667(a)(1), even though the charges thereafter were prosecuted in separate informations. (49 Cal.3d at pp. 134, 136.) The evidence before the trial court in the present case reflects that the charges leading to the prior convictions were prosecuted in separate informations in the superior court, but the evidence does not disclose whether one or two complaints were filed in municipal court. Defendant asserts, and the

---

[7] " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . .' " (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193], italics in original.)

Court of Appeal agreed, that under these circumstances the evidence was insufficient to support a finding that the charges leading to the prior convictions were separately brought. We do not agree.

It is apparent that the prosecution need not always produce the complaints filed in municipal court in order to prove that charges were brought separately within the meaning of section 667(a)(1). If, for example, the alleged prior convictions occurred several months or years apart, or arose in different counties or states, the trial court could draw the reasonable inference that the charges leading to those prior convictions had been brought in separate complaints. The present case presents a more difficult situation, because the informations were filed in the same county, defendant was convicted in court trials occurring only one day apart, and he was sentenced in both cases during the same court session. Under these circumstances, the prosecution would have been well advised to produce the complaints, if possible. Had the prosecution done so in the present case, much effort would have been avoided both by the parties and the courts.

We conclude, however, that because the separate informations from which the alleged prior convictions arose bear case numbers that differ significantly (Nos. 27767 and 27902), the trial court reasonably could infer that the charges had been initiated in separate complaints. Had the charges been filed in a single complaint, followed by a single preliminary hearing, but thereafter been prosecuted in superior court under separate informations, as in *Harris*, we would expect those informations to bear case numbers that are successive, or nearly so. (See *People* v. *Wagner, supra,* 21 Cal.App.4th 729, 732 [cases numbered consecutively in superior court following a single plea proceeding in municipal court].) The circumstance that the informations in the present case bear case numbers that differ significantly is sufficient, in the absence of contrary evidence, to support a reasonable inference that the charges were filed in separate complaints and, therefore, were separately brought within the meaning of section 667(a)(1).[8]

Our decision in *Harris* does not stand for the proposition that the prosecution must produce the complaints filed in municipal court in order to establish that charges were separately brought within the meaning of section 667(a)(1). To the contrary, the trial court in *Harris* concluded, based solely

---

[8]We need not, and do not, decide whether a contrary holding that the evidence was insufficient would necessitate striking the enhancement or, instead, remanding the case to the trial court for a redetermination of whether the charges were separately brought. (See *People* v. *Morton* (1953) 41 Cal.2d 536, 541-545 [261 P.2d 523]; see also *Caspari* v. *Bohlen* (1994) 510 U.S. __, __ [127 L.Ed.2d 236, 249-250, 114 S.Ct. 948, 956-957], discussing, but not deciding, whether the double jeopardy clause of the federal Constitution applies to noncapital sentencing.)

upon the production of separate informations, that the charges had been separately brought, and the Court of Appeal affirmed. It was only when the defendant filed a petition for writ of habeas corpus in this court, and we issued an order to show cause, that the Attorney General conducted further investigation and discovered that the prior convictions had arisen from the filing of a single complaint. Despite the circumstance that the two convictions had been initiated by a single complaint, the Attorney General contended in *Harris* that the charges leading to the prior convictions had been separately brought within the meaning of the statute because they had been prosecuted in superior court under separate informations. As noted above, we disagreed and held that only a single enhancement could be imposed under such circumstances.

Although we hold that the evidence before the trial court in the present case was sufficient to support its implied conclusion that the prior convictions in the present case arose from charges separately brought, because, as our decision in *Harris* demonstrates, this is a matter that can be revisited on habeas corpus, we have determined that it is appropriate to obtain portions of the municipal court records pertaining to the alleged prior convictions. We provided copies of these records to the parties and permitted them to submit further briefs regarding whether we should take judicial notice of these documents and, if so, the effect this evidence would have upon the present proceedings. Defendant objects that taking judicial notice of these documents would deprive him of his right to a jury determination of whether the charges were separately brought within the meaning of section 667(a)(1). As explained above, however, defendant does not have a right to a jury determination of this issue. Having considered defendant's objection, we take judicial notice that on May 6, 1983, in case No. 832606, defendant was charged by felony complaint with the May 5, 1983, burglary of "the apartment of Thelma Radford." (Evid. Code, § 452, subd. (d); see *People v. Arreola* (1994) 7 Cal.4th 1144, 1151, fn. 4 [31 Cal.Rptr.2d 631, 875 P.2d 736]; *People v. Hayes* (1990) 52 Cal.3d 577, 611, fn. 3 [276 Cal.Rptr. 874, 802 P.2d 376]; *People v. Prado* (1982) 130 Cal.App.3d 669, 675 [182 Cal.Rptr. 129].)[9] We also take judicial notice that on June 13, 1983, in case No. 833243, defendant was charged by felony complaint with the June 9, 1983, burglary of "the dwelling house of Lloyd Coyne." Finally, we take judicial notice that on July 14, 1983, in case No. 27902, defendant was charged by information with the June 9, 1983, burglary of "the dwelling house of Lloyd Coyne." These records confirm that the prior convictions alleged in the present case arose from charges separately brought.

---

[9]Evidence Code section 452 states, in pertinent part: "Judicial notice may be taken of the following matters . . . [¶] . . . [¶] (d) Records of (1) any court of this state . . . ."

## IV

We reverse that portion of the judgment of the Court of Appeal that modified defendant's sentence by striking one of the two 5-year enhancements imposed by the trial court pursuant to section 667(a)(1). In all other respects, the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Arabian, J., and Baxter, J., concurred.

**WERDEGAR, J.**—I respectfully dissent. The majority inexplicably ignores statutory language and case law precedent to hold some, but not all, elements of a Penal Code section 667, subdivision (a), enhancement raise questions of law, not fact, to be determined by the court, not the jury. Disclosing, moreover, a telling lack of confidence in its own decision, the majority contravenes established principles of appellate review to solicit and consider factual evidence neither presented nor considered in the court below. By its decision, the majority sows uncertainty where none existed before concerning the trial of enhancements, and opens the door to requests that this court sit as an extraordinary trier of fact.

## I.

Under California statutory law, an enhancement for prior conviction of a serious felony (Pen. Code, § 667, subd. (a))[1] must be pled and proven before it may be imposed. (§ 1170.1, subd. (f).) When, as here, more than one enhancement for prior conviction of a serious felony is alleged, such an enhancement has five elements: (1) conduct in the current case constituting a serious felony; (2) the fact of prior conviction; (3) an offense underlying the prior conviction that constitutes a serious felony; (4) separate initiation of the prior charges; and (5) separate adjudication of the prior charges. (§ 667(a).) As to the first three elements, the defendant's denial of the enhancement allegation indisputably raises a factual issue that must be determined by the trier of fact.

Thus, if the defendant pleads not guilty to the current charge, the question whether he has committed a serious felony "shall be tried by the court or jury which tries the issue upon the plea of not guilty." (§ 969f.) Second, as the majority concedes, the defendant's identity as the person who suffered the prior conviction is similarly tried to the trier of fact, i.e., the jury, unless a jury is waived. (Maj. opn., *ante,* at p. 583.) Third, when the prior

---

[1]Hereafter section 667(a). All further unspecified statutory references are to the Penal Code.

conviction is not on its face a serious felony, whether the criminal conduct underlying the prior conviction meets the definition of a serious felony (§ 1192.7, subd. (c)) is also a factual issue to be determined, if not admitted, by the "trier of fact." (*People* v. *Myers* (1993) 5 Cal.4th 1193, 1195 [22 Cal.Rptr.2d 911, 858 P.2d 301]; *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150].)

Notwithstanding the defendant's undisputed right to trial by jury on the first three elements, the majority, without any statutory authority, holds the final two elements alone were intended to be determined by the sentencing judge.

The majority's view rests on the erroneous premise a fact necessary to an enhancement must be determined by the jury *only* if a statute specifically so directs. To the contrary, our substantive penal statutes merely set out the elements of the various offenses and enhancements; the defendant's plea of not guilty or denial of an enhancement allegation puts each such element at issue for determination by the trier of fact, without the necessity of any further statutory direction that the particular issue be so determined. (See § 1019 [plea of not guilty puts in issue all material allegations regarding the offense charged]; *People* v. *Jackson* (1985) 37 Cal.3d 826, 835 [210 Cal.Rptr. 623, 694 P.2d 736] [residential character of current burglary is element of prior serious felony enhancement, which, "unless admitted by the defendant, becomes [an issue] to be proved at trial"]; cf. *People* v. *Thomas* (1986) 41 Cal.3d 837, 843-844 [226 Cal.Rptr. 107, 718 P.2d 94] [admission of prior serious felony charge impliedly admits each element of § 667(a)].) The Legislature is not required to individually direct, as to each factual issue raised by a defendant's plea of not guilty or denial of a prior conviction allegation, that the particular issue must be resolved by the trier of fact. Rather, such factual issues are tried to the jury "[e]xcept as otherwise provided by law . . . ." (Evid. Code, § 312.) Nothing in section 667(a) indicates the voters intended to make an exception for some, but not all, elements of this particular enhancement, nor does the majority even attempt such a claim.

Rather, as statutory authority for its assertion the only issue for the trier of fact is the defendant's identity as the prior felon, the majority relies on sections 1025 and 1158. Those sections, originally enacted in 1874 and 1872, respectively, do not refer to any particular statute predicating punishment on prior conviction. Section 1025 deals generally with the procedural relationship between, on the one hand, a defendant's plea and trial on a current offense and, on the other, his plea and trial on *any* allegation of prior conviction. The section requires a defendant charged with a prior conviction

to admit or deny the allegation at the same time as he pleads to the current offense. If he admits the prior conviction allegation but pleads not guilty, the jury trying the current charge is not to be told of the prior conviction. If the defendant denies the allegation, while pleading either guilty or not guilty to the current charge, he receives a jury trial on the question "whether or not he has suffered such previous conviction . . . ." (*Ibid.*) Section 1158, which concerns the form of verdict or finding on a prior conviction allegation, uses the same phrase.

Seizing on the language just quoted, the majority infers that *only* the fact of prior conviction is determined by the trier of fact. The inference fails for several reasons. First, we have twice held to the contrary: in *People v. Myers, supra,* 5 Cal.4th at page 1195, and *People v. Guerrero, supra,* 44 Cal.3d at page 355, we stated that whether the defendant, in the prior case, committed criminal conduct meeting the definition of a serious felony is to be determined by the "trier of fact." The Court of Appeal has likewise so held. (*People v. Jackson* (1992) 7 Cal.App.4th 1367, 1371 [10 Cal.Rptr.2d 5] [Where the allegation of prior serious felony conviction was based on a prior residential burglary, "the prosecutor had to prove not merely that appellant had been convicted of *burglary* but that the burglary was '*of an inhabited dwelling house.*' Absent such proof, the trier of fact was required to find the allegation *not true.*" (Italics in original.)].)

Second, the majority's reading attributes to sections 1025 and 1158 a meaning that could not have been intended at the time of their enactment. At the time these provisions were added to the Penal Code, the current scheme for sentencing serious felony recidivists did not exist. At that time both section 666 and former section 667 enhanced the punishment for prior offenses. Section 666 imposed increased punishment on those convicted of a new offense who previously had been "convicted of any offense punishable by imprisonment in the State Prison . . . ." (§ 666, as enacted 1872.) Former section 667 imposed increased punishment for those previously convicted of "petit larceny, or of an attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the State Prison . . . ." (Former § 667, as enacted 1872.) When, therefore, section 1025 was added in 1874, it provided a procedure for pleading to and trying the only factual question that arose under sections 666 and 667 as they were then written, i.e., the question whether the defendant had suffered the alleged previous conviction.

The statute from which the "separately brought and tried" requirement derives, former section 644, was not enacted until 1923. Current section 667 was added by initiative in 1982. One cannot reasonably infer that the

Legislature, in enacting the general guidelines of sections 1025 and 1158, anticipated the particular factual issues that would arise under statutes passed 50 or 110 years later and intended to determine, by negative implication, how those issues would be tried.

Third, the majority's construction ignores the actual language of the provisions relied on. Under sections 1025 and 1158, the defendant must admit or deny, and if denied, the People must prove the defendant suffered "such previous conviction." The antecedent of "such" in section 1025 is the previous conviction "charged in the accusatory pleading." The charge of a prior serious felony conviction, within the meaning of sections 667 and 1192.7, impliedly alleges all of the necessary factual elements of the enhancement. (*People* v. *Thomas, supra,* 41 Cal.3d at p. 843; *People* v. *Jackson, supra,* 37 Cal.3d at p. 835 & fn. 12.)[2] Consequently, a defendant's denial of a prior conviction alleged in the information puts at issue all facts necessary to the enhancement, i.e., each factual element of the charge. (*People* v. *Thomas, supra,* 41 Cal.3d at pp. 843-844.) Thus, sections 1025 and 1158 require a jury trial on *all* the elements of a section 667(a) enhancement, not merely on the defendant's identity as the person previously convicted.

Sections 1025 and 1158 have survived almost unchanged for 120 years because their language is flexible enough to accommodate changes in the particular facts the People must prove under our continually evolving system of punishment for recidivism. These provisions do not attempt to delineate the factual issues to be decided by the jury under each particular enhancement statute. They simply outline the procedures to be followed in trying those factual issues, which are established in each case by the particular enhancement charged.

The history of the separateness requirement also suggests the voters intended it as a factual requirement to be proven to the trier of fact. As we noted in *In re Harris* (1989) 49 Cal.3d 131, 135 [260 Cal.Rptr. 288, 775 P.2d 1057], the direct legislative history of section 667(a)—the analysis and

---

[2]In *Thomas,* the information alleged, in four identical paragraphs, the defendant was previously convicted "of a serious felony, to wit: BURGLARY, on charges brought and tried separately, within the meaning of sections 667 and 1192.7 of the Penal Code." (*People* v. *Thomas, supra,* 41 Cal.3d at p. 841.) Defendant admitted the truth of the allegations as read to him. (*People* v. *Thomas, supra,* 41 Cal.3d at pp. 841-842.) This court rejected the defendant's appellate contention his admissions did not serve to establish the residential character of the prior burglaries. We held "[i]t is not the function of the information to state the elements of an offense or enhancement." (*Id.* at p. 843.) Rather, counsel should explain to the client the essentials of the charge, and in such a case "the client, in admitting the charges, knowingly admits each of the elements of that charge." (*Id.* at p. 844.)

arguments presented in the ballot pamphlet for the June 8, 1982, election— does not define or discuss the "brought and tried separately" requirement. The language, however, appears to derive from the "separately brought and tried" requirement in former section 644 and should be presumed to carry the same meaning as the former provision. (49 Cal.3d at pp. 135-136.)

Before the enactment of section 667(a), a closely related additional requirement of section 644, that the defendant served prior separate prison terms, had been held a matter for proof beyond a reasonable doubt to the trier of fact. (*People* v. *Collins* (1964) 228 Cal.App.2d 460, 464 [39 Cal.Rptr. 595].)[3] The drafters of section 667(a) and the voters who enacted it may be deemed aware of that judicial construction. (*In re Harris, supra,* 49 Cal.3d at p. 136.) The drafters' failure explicitly to allocate to the sentencing judge the separateness-of-conviction question suggests they intended it, like the related question of separate prison terms, be the subject of proof beyond a reasonable doubt to the trier of fact.

In the absence of any indication of the voters' intent to remove separateness of the prior convictions from the trier of fact, the majority cursorily offers several other insufficient reasons. First, the majority cites *People* v. *Hernandez* (1988) 46 Cal.3d 194 [249 Cal.Rptr. 850, 757 P.2d 1013]. In *Hernandez,* we *rejected* the People's claim section 667.8, an enhancement for kidnapping for the purpose of committing certain sexual offenses, involved only a "sentencing fact." Our primary reason was that section 667.8 (like all enhancements under the determinate sentencing system) allows the imposition of an additional, separate term of imprisonment, a term that was otherwise not available to the sentencing judge based on the verdicts returned by the jury. (46 Cal.3d at p. 205.) Although sections 667.8 and 1170.1

---

[3]The majority incorrectly reads *People* v. *Collins, supra,* and *People* v. *Figuieredo* (1956) 146 Cal.App.2d 807 [304 P.2d 161], as suggesting the issue of separate prior prison terms, under former section 644, was decided by the sentencing judge rather than the trier of fact. In *Collins,* the court held the prosecution must prove separate terms *"beyond a reasonable doubt."* In the absence of such proof, the court remanded for "a limited new *trial"* on the question. (*People* v. *Collins, supra,* 228 Cal.App.2d at pp. 464-465, italics added.) In *Figuieredo,* similarly, the matter was remanded for a "limited new *trial* on the issue . . . ." (*People* v. *Figuieredo, supra,* 146 Cal.App.2d at p. 810, italics added.) In both cases the Courts of Appeal drew the remand remedy from our decision in *People* v. *Morton* (1953) 41 Cal.2d 536, 543 [261 P.2d 523], in which we reasoned, "There is nothing prejudicial involved in a limited new trial on the issue of the challenged prior conviction by a *jury* different from that which tried the issue of guilt of the primary offenses." (Italics added.) In *Figuieredo* the defendant had admitted the charged prior convictions (146 Cal.App.2d at p. 808), which may explain the reference (in a quote from the People's brief) to a decision on separateness by "the trial court." (146 Cal.App.2d at p. 809.) In any event, it is clear from *Collins, Figuieredo* and *Morton* the courts there contemplated a *trial* in which the prosecution would prove *all the elements* of section 644 *beyond a reasonable doubt* to the trier of fact, i.e., *the jury* if one was not waived.

were silent on pleading and proof of this particular enhancement, under our determinate sentencing scheme section 667.8 imposed not just a minimum sentence, but an additional term, and the "inevitable pattern" of our statutes is that such additional terms can only be imposed if the facts necessary to them are pled and proven. (46 Cal.3d at p. 206.)

Analogizing the "brought and tried separately" requirement of section 667(a) to the limitation on multiple punishment in section 654, the majority argues the determination of separateness comes within what the *Hernandez* court referred to as the court's duty to determine "what terms can be imposed from among those available based on the conviction offenses and the enhancements found true." (*People* v. *Hernandez, supra,* 46 Cal.3d at p. 205.) Unlike section 654, however, the separateness requirement is a *part of the statute authorizing the enhancement,* rather than a general limitation on criminal punishment. The voters evidently believed cumulatively increased punishment for multiple prior serious felony convictions was called for if, and only if, the prior proceedings were conducted separately. They incorporated this aspect of increased culpability—prior *separate* conviction of multiple serious felonies—into the law establishing the enhancement, making separate conviction a factual element required for multiple enhancements. In this sense, recidivism after multiple separate convictions is "the wrongful criminal conduct for which punishment is being imposed" (46 Cal.3d at p. 205), and must accordingly be proven by the People in the same manner as other conduct on which punishment is predicated.

Next, the majority opines the issue of separate initiation is "largely legal in nature." (Maj. opn., *ante,* at p. 590.) To the contrary, the issue as it arises here is, at least in the ordinary sense of the terms, factual rather than legal. In order for two or more enhancements to be imposed under section 667(a), the prior convictions on which the enhancements are based must have been "brought and tried separately." Under the circumstances of this case, the statutory requirement is satisfied if the prior prosecutions were initiated by separate complaints, and is not satisfied if they were initiated in the same complaint. (See *In re Harris, supra,* 49 Cal.3d at p. 136.) Thus, the question at trial was: how many complaints were filed in the prior cases? This is purely and simply a question of historical fact.

Like many other facts, separate initiation can frequently be proven by circumstantial evidence. Where, for example, the prior convictions were obtained in different counties, or at times years apart, one could easily infer they were separately initiated, without the necessity of examining the accusatory pleadings. Here the prosecution introduced evidence the prior cases had different docket numbers in the superior court. The Court of Appeal

found this an inadequate basis to infer separate initiation in the municipal court. In this court, the People argued otherwise, relying, to support the inference of separate initiation, on the premise that single complaints are only rarely severed into multiple informations. The majority agrees with the People's position, relying in addition on the relatively large gap in the numbering of the two prior superior court docket numbers as supporting an inference they arose from different complaints. (Maj. opn., *ante*, at p. 593.) Whatever the merits of these arguments, they clearly concern the *sufficiency of evidence to prove a fact.*

Evidently dissatisfied with the circumstantial evidence presented by the prosecutor, the majority sought out *direct* evidence on the question, obtaining the original complaints from the municipal courts involved. (Maj. opn., *ante*, at p. 593.) This certainly resolved the question of historical fact: there were indeed two separate complaints. It also indisputably demonstrated, however, that the number of prior complaints is an issue of fact, not law. Had it been a legal issue, this court would have resolved it in our usual manner by reference to statutes, decisional precedent and whatever other sources of legal authority bore on the question. We were of course unable to resolve this question of historical fact by legal research and reasoning, and so, properly or improperly, we took additional evidence.

The majority also argues the "brought and tried separately" question must be resolved by a court because it raises "complex and detailed" interpretive problems. (Maj. opn., *ante*, at p. 590.) I cannot agree with this non sequitur. Questions about the legal effect of a given set of facts are, of course, to be decided by the court as a matter of law, and the jury is to be appropriately instructed. That does not alter the duty of the jury to resolve the disputed issues of fact raised by the pleadings, and to apply the instructions it receives to the historical facts as it finds them. To take but one example of the many possible, the legal difficulty of properly defining the element of asportation in our various kidnapping laws (see *People* v. *Rayford* (1994) 9 Cal.4th 1 [36 Cal.Rptr.2d 317, 884 P.2d 1369]) does not make asportation a *legal* requirement. However asportation is defined, the jury must ultimately make the factual determination whether it has been proven.

All of the cases cited by the majority on this point concern a single *legal* issue: whether prior convictions should be considered "tried separately" where the prior cases were not formally consolidated, but the convictions were obtained by guilty pleas on the same day or in a single proceeding. (See *People* v. *Wagner* (1994) 21 Cal.App.4th 729, 732-737 [26 Cal.Rptr.2d 383]; *People* v. *Smith* (1992) 7 Cal.App.4th 1184, 1189-1193 [9 Cal.Rptr.2d 491].) The resolution of this question depends not on disputed facts, but on the

legal effect to be accorded a certain set of historical facts. The trial court's resolution of such legal issues should, when necessary, be embodied in appropriate jury instructions. Our statutory enhancement system, however, assigns to the jury the task of determining whether the prosecution, in a given case, has proven separate conviction, as defined in the instructions, beyond a reasonable doubt.

It bears repetition that, whatever may be the legal issues surrounding the interpretation of section 667(a), the question defendant sought to have the jury decide in this case did not involve any analysis of "provisions of California criminal procedure." (Maj. opn., *ante*, at p. 590.) The question was whether one complaint or two complaints were filed in the municipal court. Again, I would note that when the majority sought to resolve this question definitively, it consulted no "provisions of California criminal procedure." It consulted, rather, the documents actually filed and thereby ascertained there were two of them.

The majority also suggests the sentencing judge is to determine separateness of the prior convictions because the examination of a defendant's criminal record is "the type of inquiry traditionally performed by judges as part of the sentencing function." (Maj. opn., *ante*, at p. 590.) Whether the majority intends to hold that any factor traditionally considered by sentencing judges need not be proven to the trier of fact is unclear. Such a rule would be completely inconsistent with our statutes on enhancements. Most determinate sentencing enhancements are related or similar to traditional sentencing factors. Prior convictions, prior prison terms, arming and weapon use, and infliction of bodily harm, for example, are all traditional sentencing factors—indeed, they are all factors still used under California Rules of Court, rule 421—but they are also the elements of enhancements that, to be imposed, must be pled and proven to the trier of fact under California law. (§ 1170.1, subd. (f).)

Finally, the majority may be understood to hold separateness is a legal issue because its resolution requires "an examination of court documents." (Maj. opn., *ante*, at p. 590.) That reasoning is highly anomalous, since juries in many contexts must determine factual questions by examination of the record in prior proceedings. Whether the defendant has in fact suffered a prior conviction under section 667(a)—which the majority concede is for the jury to decide—is usually proven by the documentary record. Where, moreover, an allegation of prior serious felony conviction puts at issue the actual conduct for which the defendant was convicted in the previous proceeding, the trier of fact—that is, the jury, unless jury trial is waived—must decide *from the record in the prior proceeding* whether the prior conduct was within

the statutory definition of a serious felony. (*People* v. *Myers, supra,* 5 Cal.4th at p. 1195; *People* v. *Guerrero, supra,* 44 Cal.3d at p. 355.) Numerous other penal laws require determination of the existence and nature of prior convictions; these, too, are normally proven to the trier of fact by "court documents." (See, e.g., §§ 190.2, subd. (a)(2), 667, subds. (b)-(f), 667.5, 667.6, subds. (a), (b), 667.7, 667.71, 667.75; Health & Saf. Code, §§ 11353.4, 11357, subd. (b); Veh. Code, § 23190.) In other areas of law as well, prior legal proceedings may be the subject of factual disputes assigned to the jury for decision. (See, e.g., *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 185 [156 Cal.Rptr. 745] [in trial of malicious prosecution action, jury decides whether voluntary dismissal of prior action was unfavorable termination], overruled on other grounds, *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 882-883 [254 Cal.Rptr. 336, 765 P.2d 498]; *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 509, fn. 1 [183 Cal.Rptr. 647, 646 P.2d 809] [material facts raised by plea of once in jeopardy are for jury to resolve].) In short, that resolution of a factual issue raised by the pleadings requires examining the record of prior proceedings is not cause to remove it from the trier of fact.

To summarize, separate initiation and adjudication of the previous charges are factual elements necessary to proof of multiple prior serious felony convictions under section 667(a). Under our system of sentences and enhancements, section 667(a) enhancements must be pled and, if denied by the defendant, proven to the trier of fact. As with other offenses and enhancements, the defendant's denial places at issue all the elements of the section 667(a) enhancement, not merely the bare fact of prior conviction. No statute or precedent removes these particular factual elements from the trier of fact, and nothing in section 667(a) indicates an intent to do so. To the contrary, the settled interpretation of a predecessor statute suggests the voters intended to require, under section 667(a) as under the previous provision, that each element of the enhancement be proven beyond a reasonable doubt to the trier of fact. I would therefore hold the trier of fact, rather than the sentencing judge, determines factual issues necessary to deciding whether prior convictions were brought and tried separately as required by section 667(a).

## II.

I also dissent from the majority's conclusion the evidence presented at trial in this case was sufficient to support a finding of separate initiation. To determine if substantial evidence supports the trier of fact's finding on an enhancement allegation, we ask whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the facts necessary to the enhancement beyond a reasonable doubt, viewing the evidence in a light

favorable to the judgment and presuming in its support the existence of every fact the trier of fact could reasonably infer from the evidence. (*People v. Tenner* (1993) 6 Cal.4th 559, 567 [24 Cal.Rptr.2d 840, 862 P.2d 840]; see *People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

In this case no direct evidence showed how the charges originated in municipal court, whether in a single or multiple complaints. The evidence showed only that the two prior convictions were obtained in superior court on successive days under separate docket numbers. As we know from *In re Harris, supra,* 49 Cal.3d at page 134, the existence of separate informations in superior court does not allow one to infer with confidence the charges were initially brought by separate complaints. (See also *People v. Williams* (1990) 220 Cal.App.3d 1165, 1172 [269 Cal.Rptr. 705] [as in *Harris,* two charged priors had been brought in single complaint].) In my view, the 135-number difference between the 2 actions, in the absence of evidence as to the rate of new filings in Contra Costa County Superior Court in 1983, did not establish what length of time separated the 2 superior court filings. The number difference was thus insufficient to show beyond a reasonable doubt the charges were separately brought in municipal court.

The majority's independent investigation of the facts of the prior proceedings, and their use, in an appellate opinion, of the facts so discovered, is both puzzling and troublesome. It is puzzling because the facts judicially noticed are irrelevant to any issue on appeal. They were not presented to either the jury *or the sentencing court* below. Even under the majority view on the jury trial issue, therefore, these facts are irrelevant to the question whether the evidence *in the lower court* was sufficient to support a finding of separate initiation.[4]

The majority seems to acknowledge the irrelevance of the extra-record documents to show sufficiency of the evidence below, as it does not purport to use the products of its investigation to support its holding on sufficiency.

---

[4]This precise issue was considered, and correctly decided *against* the use of extra-record evidence, in *People v. Jackson, supra,* 7 Cal.App.4th 1367. There the People, having failed to prove the 667(a) allegation at trial, requested the appellate court nonetheless find the evidence sufficient on the basis of certain documents from the prior proceedings put before the appellate court for judicial notice. As characterized by the Court of Appeal, "the Attorney General, despite virtually conceding the *trial* death of the allegation, argues that, like Lazarus, it can be raised from that death. [¶] This resuscitative feat, the Attorney General contends, may be accomplished either by appellate judicial notice [citations] or appellate factfinding [citations]." (7 Cal.App.4th at p. 1372, fns. omitted.) The Court of Appeal declined to judicially notice the serious felony character of the prior conviction, noting there was "no authority for the proposition that an essential element, not proved at trial, may be proved on appeal." (*Id.* at p. 1373.)

Instead, the majority suggests the materials are properly noticed in order to preclude a possible petition for writ of habeas corpus. The merits of any possible writ petition, however, are patently not an issue in this appeal. In any event, such preclusion is wholly unnecessary: no claim for relief could be made on habeas corpus unless the petitioner, after his own investigation, was able to allege with particularity facts showing the prior charges were *not* brought separately. (See *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793].) The majority's investigation, in discovering separate complaints, could only preclude a petition that would never be brought, because no facts would support it. We should not have taken notice of these irrelevant materials. (See *Mangini* v. *R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

The use of these extra-record materials in an appellate opinion is troublesome because it suggests, wrongly I believe, that litigants may safely neglect to make their most complete factual case before the trial court, since on appeal they can supplement the trial record with documentary evidence they failed to introduce below. The inefficiency of such procedures, and the increased burden their widespread use would place on the Courts of Appeal, are too obvious to require elaboration. This court recently decided to apply the doctrine of waiver more broadly in the sentencing process, in the hope that increased efforts to articulate and present sentencing issues in the trial court will "reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*People* v. *Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) The majority's use of judicial notice to supplement an appellate record seems inconsistent with that policy.

For the above reasons, I would affirm the judgment of the Court of Appeal.

Mosk, J., and Kennard, J., concurred.

Appellant's petition for a rehearing was denied May 17, 1995, and the opinion was modified to read as printed above. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.