Filed 2/3/14  P. v. Kegin CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JASON OSROY KEGIN,<br><br>    Defendant and Appellant. | F064193<br><br>(Super. Ct. Nos. BF134556A &<br>BF136273A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Rita Barker, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Gomes, Acting P.J., Franson, J. and Peña, J.

Pursuant to a plea agreement, defendant Jason Osroy Kegin pled no contest to one count of robbery (Pen. Code,[1] § 212.5) in case No. BF134556A. On February 15, 2011, pursuant to his plea bargain, defendant was placed on probation and ordered to serve one year in the county jail.

On April 5, 2011, defendant was charged with several felony counts and enhancements stemming from a shooting which occurred on March 26, 2011, in case No. BF136273A. After a trial by jury, defendant was convicted of assault with a firearm (§ 245, subd. (a)(2)), and being a felon in possession of a firearm (former § 12021, subd. (a), now § 29800, subd. (a)(1)). The jury also found true a special allegation that defendant had personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)) and had personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)). The jury acquitted defendant of an attempted murder (§§ 664, 187, subd. (a)) charge. In a bifurcated proceeding, the trial court found true allegations that defendant suffered a prior strike within the meaning of the three strikes law, and he had previously been convicted of a serious felony within the meaning of section 667, subdivision (a).

The trial court sentenced defendant to a total term of 26 years on the shooting charges. In addition, the court found defendant in violation of his probation on the robbery case and sentenced him to a concurrent three-year term. On appeal, defendant contends the trial court erred in denying his motion for a mistrial and imposing an unauthorized sentence. We find no error.

**FACTS**

On March 24, 2011, Mario Dardon was working as a security guard at the Vallarta Market on Niles Point Road in Bakersfield. During the morning hours, Dardon's attention was drawn to defendant as he was leaving the store. He recalled defendant had a distinctive bump on his face. Dardon stopped defendant to speak with him about taking some items from the market. Defendant denied taking anything and a physical struggle

---

[1]All further references are to the Penal Code unless otherwise indicated.

ensued when Dardon placed a hand on defendant. During the struggle, defendant hit Dardon on the head. With the assistance of a manager, Dardon was able to place handcuffs on defendant and detain him until the police arrived. During the incident, defendant threatened to come back and "do something" to Dardon, however Dardon did not take the threat seriously as many of the shoplifters he has detained have made similar threats, but they were never carried out.

Sheriff's Deputy Joshua Brooks responded to the incident. After viewing the surveillance video and speaking to the witnesses, the deputy was not able to determine a crime had been committed, and therefore, did not arrest defendant. The deputy, however, did take defendant from the store.

Two days later, Dardon and his fiancée Carmen Fuentes went to the Vallarta Market on Panama Lane in Bakersfield to do some shopping. Fuentes parked and they began walking to the store. As they approached, Dardon saw defendant near the front of the store. When he spotted defendant, Dardon told Fuentes he wanted to leave because he did not want any problems from defendant. Dardon was able to recognize defendant from the incident two days prior.

The two walked back to their truck and Fuentes sat in the driver's seat. As Dardon was getting into the passenger seat of the truck, he saw defendant run up with a gun. Defendant said, "'I told you I was going to come back and kill you.'" Dardon was partially in the truck, with his right leg still on the concrete and the door open. Defendant was standing in the area of the open passenger door and pointed the gun at Dardon's chest. Dardon told Fuentes to drive, but she hesitated because she said she would hit defendant. Dardon told her to drive anyway because defendant had a gun pointed at him. Fuentes began to back out of the parking space when defendant fired, striking Dardon in the left leg. The bullet traveled through his leg.

Fuentes drove Dardon to the hospital, where he was treated for the gunshot wound to his leg. Bakersfield police officers Tyler Kinney and Stephen Wilson responded to the hospital regarding the shooting. Dardon gave the officer a brief account of incident and

3.

described defendant as the person he had encountered at the other Vallarta Market two days prior. Officer Kinney conducted a search of the Sheriff's Department records and prepared a photographic lineup with defendant's picture. Dardon and Fuentes both identified defendant in the lineup.

Officers went to the location of the shooting, but they were unable to locate any evidence or witnesses there. Officer Kinney reviewed the video surveillance from the market but was unable to find the incident on the video surveillance due to the poor quality of the video. Kinney searched the entire area of the parking lot and was unable to find any shell casings or blood. He and Officer Wilson also searched the victim's vehicle but were unable to find any bullets or bullet holes.

At the time of trial, Dardon was still feeling the effects of the gunshot wound, which caused him pain and to walk with a limp. The gunshot left multiple bullet fragments in his leg.

The parties stipulated defendant had suffered a prior felony conviction.

## DISCUSSION

### I. The Motion For Mistrial Was Properly Denied

Prior to trial, defendant moved to exclude evidence Fuentes had a miscarriage. Defense counsel argued Fuentes "had indicated that she had miscarried her child, and she believed that it was because of the trauma from this incident, and I would ask to exclude that as irrelevant, highly inflammatory."

The prosecutor argued the evidence was relevant because the fact Fuentes suffered a trauma that "manifested itself in a physical injury to her lend[s] credence and credibility to the testimony of not only her, but also" Dardon. He further argued the evidence tended to rebut the defense theory, as stated in opening statements, that Dardon fabricated the entire incident.

The trial court excluded the fact Fuentes miscarried the child, ruling:

"I'm not going to permit testimony that she miscarried her child. There's no—the probative value of that related to her credibility is outweighed by

4.

the prejudicial effect under [Evidence Code] Section 352. If it does have relevance to her credibility—and it may—but it isn't the fact of the miscarriage of the child. It's the fact that she was emotionally traumatized to the point of having perhaps physical symptoms, fight or flight symptoms. I have no problem with eliciting that question from her, and I will permit you to lead so that you do not—so that she does not volunteer the information regarding the miscarriage, but I think the miscarriage takes the jury into an area of sympathy or inappropriate punitive attitude given the issues in the case. So that's my ruling."

During the direct examination of Fuentes, the prosecutor asked her if she was "pregnant at the time of the shooting?" She replied, "Yes." Defense counsel immediately objected and the objection was sustained. No further reference to Fuentes's pregnancy was made during trial.

Defense counsel subsequently made a motion for a mistrial, arguing the prosecutor violated the court's in limine ruling and questioned Fuentes about her pregnancy. The prosecutor responded he understood the court's ruling was not to discuss the miscarriage. He stated:

> "The purpose of me introducing whether or not she was pregnant was to aid in her fear of the gun drawn on her by the defendant and to provide testimony that would support not only her, but would also support Mario Dardon's testimony as to her state of mind, the fear they were in when the defendant assaulted them with the firearm, and her reaction and why she reacted that way."

He noted the question simply called for the fact she was pregnant, an objection to the question was sustained, no further inquiry was made on the matter, and there was never any mention of a miscarriage.

The court denied the motion for a mistrial, finding there was no prejudice. The court ruled:

> "I sustained the objection. I understand why the question was asked. I had ruled that the witness' state of mind was perhaps relevant to the impression made either going to the strength or the weakness of her ability to identify the defendant. Whether or not she was pregnant I found to be irrelevant, but I think I sustained the objection, and I don't see prejudice because we stopped the examination at that point."

On appeal, defendant argues the trial court erred in denying his motion for a mistrial because evidence that Fuentes was pregnant at the time of the incident "uniquely tends to evoke an emotional bias against a defendant." He claims the evidence "was not properly admissible for any purpose," and consequently "the evidence was prejudicial." We find no error.

A ruling denying a motion for a mistrial is reviewed under the deferential abuse of discretion standard. (*People v. Ayala* (2000) 23 Cal.4th 225, 282.) A "motion for mistrial should be granted only when '"a party's chances of receiving a fair trial have been irreparably damaged."'" (*Ibid.*) Here there was no irreparable prejudice from the single question regarding whether Fuentes was pregnant at the time of the incident. Unlike the fact of a miscarriage as a result from the trauma of the incident, which could inflame the jury's passions, the mere fact Fuentes was pregnant at the time did not carry the same prejudicial effect.

Fuentes was a witness to, not the victim of, the assault. The evidence was clear the attack was directed at Dardon alone, as retaliation for the incident two days prior. The defense argued the entire incident was fabricated and, if there was an actual attack, defendant was not the perpetrator. The evidence of the shooting itself was quite egregious, and the fact a witness to the attack was pregnant was no more prejudicial than the crime itself. Further, we note no mention was ever made of any miscarriage, and the only mention of Fuentes's pregnancy was the brief question and answer relayed in her direct testimony. Additionally, the jury's verdicts in this case, which acquitted defendant of attempted murder and convicted him only of the shooting and the firearm possession counts, indicate the jury considered the evidence and was not swayed by any possible prejudice stemming from the fact Fuentes was pregnant at the time. Based upon our reading of the entire record, it is clear the testimony did not result in any incurable prejudice to the defense. As such, we find the trial court's ruling denying the motion for a mistrial was not an abuse of discretion.

## II.  The Trial Court Made the Appropriate Finding on the Priors

Having waived a jury trial on the issue of his priors, a court trial was held after the jury returned its verdicts on the above charges.  The People introduced documentary evidence showing defendant had been convicted of robbery on February 15, 2011, in case No. BF134556A.  After submitting on the documents, the trial court stated:

> "THE COURT:  … I'm prepared to make a finding regarding the truth of the allegation of the prior conviction as alleged in the information.  The legal effect of that determination as a serious felony and the impact of that upon sentencing would be determined at time of sentencing.  Do you agree?
>
> "[PROSECUTOR]:  Yes, your Honor.
>
> "THE COURT:  All right.  Well, based on the evidence before me, I find beyond a reasonable doubt that the allegation of the prior conviction in Case No. BF134556 on February 15, 2011, is true and that in terms of the legal effect, it may be a serious felony.  It may have the legal effect as alleged in the information.  The Court will determine the legal effect of that finding at time of sentencing."

Relying solely on *People v. Zackery* (2007) 147 Cal.App.4th 380, defendant argues that because the trial court never expressly made a finding his prior robbery was a prior serious felony conviction within the meaning of the three strikes law and section 667, subdivision (a), his sentence reflecting a prior strike and a prior serious felony conviction was improper.  We disagree.

*People v. Zackery* is inapposite.  There, although the defendant's counsel indicated the defendant would be entering a plea to all charges; no plea was ever entered to a charged driving under the influence count.  At sentencing, the trial court imposed a sentence on the driving under the influence charge.  The court held the sentence on that count was unauthorized as the defendant was never convicted of that charge.  (147 Cal.App.4th at p. 386.)  Thus, *Zackery* stands for the rather unremarkable position that a defendant cannot be sentenced to a charge for which the defendant had not been convicted.  Unlike the situation in *Zackery*, the trial court here, acting as the finder of fact, found defendant had indeed suffered the prior conviction at issue.  Thus, he was

7.

convicted of the prior. The issue present here is whether the trial court's failure to expressly articulate the legal effect of the prior conviction precluded defendant's sentence under the three strikes law. It does not.

In *People v. Williams* (2002) 99 Cal.App.4th 696 (*Williams*), the Third Appellate District addressed an issue similar to the present case. There, a jury found true the allegation the defendant suffered a prior strike conviction for burglary. Although the prosecution also charged a prior serious felony conviction pursuant to section 667, subdivision (a) based upon the same prior conviction, the jury never returned a verdict concerning that prior. Nevertheless, the trial court imposed a five-year enhancement based upon the section 667, subdivision (a) prior. (*Williams*, at pp. 699-700.)

In considering whether the jury's verdict regarding the strike prior was sufficient to support the imposition of a section 667, subdivision (a) enhancement, the *Williams* court observed, "Legal questions, such as whether multiple prior convictions were separately brought and tried or whether a prior or present felony conviction qualifies as a 'serious felony' under the Three Strikes law, are matters to be determined by the court. [Citations.]" (*Williams*, *supra*, 99 Cal.App.4th at pp. 700-701; see *People v. McGee* (2006) 38 Cal.4th 682, 695-709 [defendant not entitled to jury determination of whether prior qualifies as serious or violent felony].) Because the strike prior and the serious felony enhancement were premised upon the same conviction, the jury's true finding designating the prior conviction as a strike prior "encompassed the requisite fact necessary to support the enhancement under section 667, subdivision (a)(1)." (*Williams*, *supra*, at p. 701.) The *Williams* court held the trial court had properly imposed the serious felony enhancement, reasoning: "The additional finding required by section 667, subdivision (a), that the felony is a serious felony, is a legal question to be decided by the trial court. [Citations.] The trial court impliedly made that finding when it imposed a five-year term of imprisonment pursuant to section 667, subdivision (a)." (*Ibid*.)

Likewise, in *People v. Clair* (1992) 2 Cal.4th 629, our Supreme Court considered the situation where the defendant waived a jury trial on a prior serious felony conviction

allegation, and the trial court ultimately imposed an enhancement for the prior conviction without expressly indicating its finding on the underlying prior conviction allegation. The court found the enhancement was properly imposed because the evidence supporting the prior conviction was introduced into evidence and the court "impliedly—but sufficiently—rendered a finding of true as to the allegation when it imposed an enhancement *expressly* for the underlying prior conviction." (*Id*. at p. 691, fn. 17.)

Similarly here, the record demonstrates the trial court impliedly found the robbery conviction qualified as a serious felony. Initially, we note the court expressly found the prior conviction was true; it reserved only the legal issue of whether it qualified as a serious felony for sentencing. The court implicitly resolved this question at sentencing when it imposed a second strike sentence and the five-year enhancement pursuant to section 667, subdivision (a). Prior to sentencing, the trial court specifically heard defendant's motion to strike the prior strike pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and denied that motion, indicating it found the prior qualified as a serious felony. The probation report, which the court read and considered, explained defendant was ineligible for probation due to the prior strike conviction. At sentencing the court noted it had previously denied the motion to strike the prior strike conviction. Furthermore, defendant's prior conviction was for robbery, an offense which is undoubtedly a serious felony. (§ 1192.7, subd. (c)(19); *People v. McGee*, *supra*, 38 Cal.4th at p. 694 [robbery is a per se serious felony].) Based on the entire record, it is clear the trial court implicitly found the prior conviction qualified as a serious felony. Therefore, we find no error.

## DISPOSITION

The judgment is affirmed.