Filed 8/19/25  P. v, Baeza CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ISMAEL CHAMONICA BAEZA,<br><br>    Defendant and Appellant. | 2d Crim. No. B341149<br>(Super. Ct. No.<br>F000274308001)<br>(San Luis Obispo County) |

Ismael Chamonica Baeza appeals the denial of his motion under Penal Code[1] section 1473.7 to vacate his conviction for stalking (§ 646.9, subd. (a)).  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 3, 1998, a complaint charged appellant with felony stalking (§ 646.9, subd. (a)) and misdemeanor resisting a peace officer (§ 148, subd. (a)(1)).  The following day, appellant pleaded no contest to the stalking charge pursuant to a plea agreement.  The resisting a peace officer charge was dismissed.

_____

[1] Undesignated statutory references are to the Penal Code.

Appellant was to receive probation and serve 180 days in county jail imposed in two prior misdemeanor cases for which he was already on probation.

The prosecutor stated that "if [appellant] were to return to this country illegally, he would violate the terms and conditions of his felony case." During the plea colloquy, the court advised appellant: "If you are not a citizen of the United States, you are hereby advised that your conviction of the offense to which you are pleading no contest will result in your deportation, exclusion from admission to the United States and denial of naturalization pursuant to the laws of the United States? Do you understand that?" Appellant replied: "Oh, yes."

A Notice of Custody Determination dated September 23, 1998 provided appellant would be detained by Immigration and Naturalization Service. Appellant acknowledged receipt on November 30, 1998. On December 31, 1998, an immigration judge denied appellant's application for voluntary departure and ordered him removed to Mexico.

On March 19, 2002, the court revoked probation and sentenced appellant to 16 months in prison. The appellate record does not contain a transcript of the proceeding. The docket shows appellant admitted the probation violation. The minute order is silent as to any immigration advisement.

In 2024, appellant filed a motion to vacate conviction pursuant to section 1473.7. The motion included a declaration by appellant, which was later amended, and several exhibits, including character reference letters.

The court denied the motion. The court concluded appellant had not shown the stalking conviction was currently causing or had the potential to cause adverse immigration

consequences. It stated the record indicated appellant was subject to a deportation order prior to his 1998 plea. The court quoted the presentence report[2]: "'In addition, the defendant cannot legally reside in California. He, therefore, will be deported at the completion of his sentence. This defendant had previously been deported and has returned to the United States. The defendant was also informed that if he was to return illegally, it would be recommended that the defendant serve a long period of time in custody for the violation of probation. The defendant claims he understands, and that once deported, he plans to return to his family in Mexico.'" The court also found appellant "was adequately advised" and unable "to meet his burden for relief under the statute."

DISCUSSION

Appellant raises multiple issues, including failure to (1) inform him immigration consequences were "mandatory and for life"; and (2) advise him "of the immigration consequences of his admitting his violation of probation . . . ." We conclude appellant has not shown prejudice as to his 1998 plea. Furthermore, by failing to provide an adequate record, he has forfeited on appeal any claim based on the probation violation admission. Thus, we will affirm the section 1473.7 denial.

*Legal Principles*

Section 1473.7, subdivision (a)(1) authorizes a person no longer in criminal custody to file a motion to vacate a conviction or sentence that is "legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."

_____

[2] The report is not part of the appellate record.

3

"A successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the actual or potential immigration consequences of a plea." (*People v. Vivar* (2021) 11 Cal.5th 510, 517.) "'[P]rejudical error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.'" (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*); *Vivar*, at pp. 529-530.)

To assess prejudicial error, "courts must 'consider the totality of the circumstances.' [Citation.] 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. [Citations.] Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Espinoza, supra*, 14 Cal.5th at p. 320.) "A defendant must provide ""objective evidence"" to corroborate factual assertions." (*Id.* at p. 321.)

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences." (*Espinoza, supra*, 14 Cal.5th at p. 319.) Under that standard, ""'an appellate court exercises its independent judgment to determine whether the facts satisfy the rules of law.'"" (*Id.* at pp. 319-320.) When "the trial court's

4

findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court "'are in the same position,'" and no deference is owed." (*Id*. at p. 320.)

*Appellant's Plea*

Appellant has not shown prejudice.

Appellant lacked strong ties to the United States when he pleaded no contest. Appellant came to the country in 1990 at age 17. His declaration does not discuss any family living in the country. He has never been married and has no children. Although appellant includes several character references, none appear to have known him at the time of his 1998 plea. Appellant's tenuous ties to the country present a stark departure from cases in which "a defendant's strong community ties . . . provide compelling evidence in support of a finding of prejudicial error." (*Espinoza, supra*, 14 Cal.5th at p. 322 [defendant's wife and five children were United States citizens, and his parents and siblings lived in the United States].)

Appellant did not place importance on avoiding deportation when he pleaded. (*Espinoza, supra*, 14 Cal.5th at p. 320.) On the contrary, the record indicates appellant knew he would be deported and would risk imprisonment if he returned illegally. Consistent with his lack of strong United States ties, appellant ostensibly "'plan[ned] to return to his family in Mexico'" once deported. An advisal his plea would carry certain mandatory and lifetime consequences had little prospect of changing his calculus.

Appellant was also already on probation in two misdemeanor cases when he pleaded no contest to stalking. Appellant faced up to three years in prison for that charge. Pursuant to the plea agreement, appellant instead received 180 days in jail and a grant of probation. Even if a probation

violation and prison sentence would later create mandatory, lifetime immigration consequences, appellant was unlikely to obtain a more favorable outcome at the time of his plea.  He does not offer, for example, an immigration attorney's declaration identifying a better—yet still plausible—option.  Appellant has failed to show any immigration misunderstanding "constituted prejudicial error." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)

*Appellant's Probation Violation*

Appellant contends he was not advised of immigration consequences before admitting his probation violation.  The record is inadequate to permit review of his contention.

""A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown . . . .""" (*People v. Wiley* (1995) 9 Cal.4th 580, 592, fn. 7.)  Accordingly, "[i]t is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385; see also *People v. Whalen* (2013) 56 Cal.4th 1, 84-85, disapproved on other grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1, 44, fn. 17.)

The appellate record lacks a transcript of the 2002 probation revocation hearing.  The docket indicates the court reporter filed a transcript of that hearing.  There is no declaration from appellant's counsel or the court reporter regarding any efforts to produce that transcript.  That transcript would be integral to our independent review.  By failing to provide an adequate record to permit review, appellant has

forfeited on appeal any claim based on the probation violation admission.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>




                                             CODY, J.

We concur:


GILBERT, P.J.


BALTODANO, J.

7

Rita B. Federman, Judge

Superior Court County of San Luis Obispo

_____

Angelica Maria Gutierrez Diaz for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.